# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSHUA M. CLINE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **NO.  3:15-cv-00950** |
| | ) | |
| **J. RAY ORMOND and** | ) | **JUDGE CAMPBELL** |
| **HERBERT H. SLATERY, III,** | ) | |
| | ) | |
| **Respondents.** | | |

## MEMORANDUM

Petitioner is an inmate of the Petersburg Federal Correctional Institution in Petersburg, Virginia, where he is serving a federal sentence imposed by this Court and concurrently serving an effective Tennessee sentence of 50 years for two counts of rape of a child.  He has filed a pro se Amended Petition under 28 U.S.C. § 2254 for the writ of habeas corpus to challenge his state convictions and sentences and has paid the filing fee.  The Court will deny his petition for the reasons set forth below.

## I.     BACKGROUND AND PROCEDURAL HISTORY

On January 21, 2009, a Magistrate Judge of this Court issued a warrant for Petitioner's arrest on the basis of an affidavit from a Special Agent of United States Immigration and Customs Enforcement.  The Special Agent testified that an investigation of an internet company selling access to child pornography had uncovered the apparent purchase of such access by Petitioner, and led, in turn, to the discovery on Petitioner's computer of a pornographic video he had produced in Clarksville, Tennessee. Sealed Complaint and Warrant, *United States v. Cline*, No. 3:09-cr-37

(M.D. Tenn. Jan. 21, 2009).[1]  Petitioner ultimately pleaded guilty and was convicted in this Court of one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and was sentenced to 327 months (27 years and 3 months) in the United States Bureau of Prisons. Amended Judgment in a Criminal Case, *id.* (M.D. Tenn. Oct. 14, 2011) (Haynes, J.).

On April 18, 2013, Petitioner entered an open guilty plea in the Circuit Court of Montgomery County, Tennessee, to two counts of rape of a child. (Doc. No. 27-2.)  The state court sentenced him to 25 years in prison on each count, to be served consecutive to each other but concurrent with his federal sentence. (Doc. No. 27-1 at 19, 20; Doc. No. 27-3 at 28.)   Petitioner appealed the consecutive nature of the state sentences, but the Tennessee Court of Criminal Appeals affirmed on March 26, 2014, and the Tennessee Supreme Court denied discretionary review on August 27, 2014. (Doc. Nos. 27-7, 27-10.)

On August 31, 2015, Petitioner filed a pro se petition for state post-conviction relief. (Doc. No. 27-11 at 5.)  The post-conviction court appointed counsel (*id.* at 36), who filed an amended petition on July 21, 2014. (*Id.* at 90).  The court held a hearing on December 16, 2016 (Doc. No. 27-12) and denied relief on January 10, 2017. (Doc. No. 27-11 at 94.)  The Tennessee Court of Criminal Appeals affirmed, and the Tennessee Supreme Court denied discretionary review on February 14, 2018. (Doc. Nos. 27-16, 27-19.)

In the meantime, Petitioner filed his petition for a federal writ of habeas corpus pursuant

---

[1] Specifically, the Special Agent testified that investigation revealed approximately 50 transactions between the company and the email address whose user consistently used the name "Joshua," "JC," or "Joshua Cline," and that a search of Petitioner's living quarters at Camp Liberty in Iraq, executed by U.S. Army Criminal Investigative Division personnel pursuant to a sworn search and seizure authorization, "resulted in the seizure of numerous DVDs and CDs as well as an external hard drive that CLINE admitted to using for the storage of approximately 10 to 15 gigabytes of child pornography." Sealed Complaint at 2–4, *id.*  Further forensic examination of Petitioner's computer discovered a video of the sexual exploitation of a young child who was established by other files on Petitioner's computer to be his step-daughter. *Id.*

to 28 U.S.C. § 2254 in this Court on August 31, 2015, along with a motion to hold the case in abeyance pending the outcome of his state post-conviction case. (Doc. Nos. 1, 2.) The Honorable William J. Haynes, who has since retired from the Court, granted the motion and stayed the case on September 25, 2015. (Doc. No. 5.) Petitioner moved to reopen this case on June 4, 2018, less than four months after the Tennessee Supreme Court denied review. (Doc. No. 12.) The Court granted that motion, ordered Petitioner to file an amended petition, and ordered Respondent to respond to the amended petition. (Doc. Nos. 16, 18.) Both parties complied. (Doc. Nos. 17, 27–28.) Petitioner was allowed ample opportunity to file a reply, which he has failed to do.[2] Accordingly, the Court finds this case adequately briefed for ruling.

## II. STATEMENT OF FACTS

At Petitioner's plea hearing, the prosecutor summarized the investigation that led to the criminal charges, and Petitioner admitted his criminal actions as follows:

THE COURT: What are the facts?

GENERAL NASH: For the record, the date of birth of the victim in counts one and two is April 18th, 2001. The relationship with the victim and the defendant is adopted daughter. This is -- the date of offense is March 4th, 2008. I will get to how that was discovered. This is an investigation that began to investigate solicitation of child pornography by the Homeland Security, that division in charge of that. That led to certain e-mail addresses that were traced to Mr. Cline. It was discovered that Mr. Cline was a member of the military and in the middle of 2008, he was in Iraq serving our Country.

A search warrant was authorized of his living quarters in Iraq and a Gateway Laptop, other DVDs and CDs, external hard drives were recovered by Special Agent Miquel Lopez (phonetic) of the U.S. Army CID in Iraq. Those items were examined by Special Agent Bruce Mitchell (phonetic). He performed a forensic exam on the Gateway Laptop that was in Mr. Cline's posession [sic]. Special Agent Mitchell discovered a file named P3040023.AVI (phonetic). This particular file was a movie that depicted an adult caucasian male with a caucasian female estimated age range at that time was seven to ten. Depicted in this video, are the counts that Mr. Cline is pleading to, which one is the penetration of victim-- in the victim's

[2] The Court is contemporaneously entering an Order addressing that issue.

mouth with the male's penis and also anal penetration of the female child.

Further exam of the defendant's laptop, at that time discovered another file of the same female in more of a family setting. Those two based on Special Agent Mitchell reviewing the two females, researching Mr. Cline's history at the time, that he had a daughter and that these two individuals were the same -- the one in the movie and the one in the photos. Of course, a warrant was issued in Federal Court for the production of child pornography, which Ms. Myers has said Mr. Cline has been convicted of the production of this particular movie and is serving twenty-seven and a half years in the Federal penitentiary.

The expected testimony by both the victim and the mother of the victim, who have viewed portions of the movie, have both identified who the child is and who the male is in the movie. They have also identified the place that this took place, which is the bedroom of the family house here in Clarksville, Tennessee, at that time. By furnishings and other things contained in the video.

The movie lasted four minutes and six seconds and it is high resolution and the victim has identified herself in it and her adoptive father as being the one performing those acts on her. So those are the facts and circumstances underlying these pleas.

One other thing – I'm sorry, March 4th, 2008, in the movie, in its properties, it was created on March 4th, 2008. The testimony by the wife of the defendant at that time and confirmed by military sources is that was Mr. Cline's mid-term leave and he was in Clarksville at the time of March 4th, 2008, and that is the creation date of that video.

THE COURT:   This is a 2007/2008, so you are talking March 2008, is that correct?

GENERAL NASH: That's correct.

THE COURT:   At that time, what was the range of punishment for child rape?

MS. MYERS:  Twenty-five years, Your Honor.

GENERAL NASH: No less than twenty-five years.

MS. MYERS:   No real range reflected in the statute during those years.

. . .

MS. MYERS: I have copies of the Statute, Your Honor, I can bring to the Court at the next -- I have already printed them. I just left them on my desk.

THE COURT:   I assume you have gone over those with Mr. Cline?

MS. MYERS: Oh, yes, Your Honor.

THE COURT: He knows what it is-- Mr. Cline, raise your right hand.

(WHEREUPON, the Defendant was sworn by the Court)

THE COURT:    Mr. Cline, you are charged in this indictment, 41300063, of intentionally or knowing sexually penetrating this person whose initials are EC, who was more than three years of age, but less than thirteen, by inserting your penis

4

into her anus. That's count one. Count two is an allegation of intentionally sexually penetrating this same person who was more than three years of age but less than thirteen by inserting your penis into EC's mouth. These are Class A Felonies, rape of a child, and I understand Ms. Myers has gone over the punishment with you, but it is the minimum of twenty-five years at a hundred percent? So I assume, this being an open plea, it would be my determination as to the sentence but also whether you serve that concurrently or consecutively to the Federal sentence that you already have; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Now, Mr. Eisner has gone over all these things with you, I understand the T.B.I. sex offender registry, which you would be on basically for life and community supervision for life; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: If you violate those, those are crimes that you can be punished for. Do you understand the agreement as it is at this point?

DEFENDANT: Yes, Your Honor.

THE COURT: You do have a jury trial set I believe on Monday of next week; at that jury trial, Ms. Myers would have entered a plea of not guilty on your behalf and the burden would have been upon the State to prove beyond a reasonable doubt that you did, in fact, intentionally sexually penetrate DC [sic], who was more than three years of age and less than thirteen years of age, in count one, by inserting your penis into her anus, actual penetration and in count two, that you actually inserted your penis into EC's mouth. Do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand by pleading guilty, you are giving up your right to have that jury trial?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you likewise understand you are giving up the right to require the State to prove guilt beyond a reasonable doubt?

DEFENDANT: Yes, Your Honor.

THE COURT: You would have a right to confront witnesses. These witnesses for the State would have been required to come to Court to testify in your presence, the jury's presence and be subject to cross examination or questioned by Ms. Myers on your behalf? That is your right to confront witnesses; do you understand that right?

DEFENDANT: Yes, Your Honor.

THE COURT : Do you understand by pleading guilty, you are giving up that right?

DEFENDANT: Yes, Your Honor.

THE COURT: You would have also had a right if you wanted to, to supboena witnesses; that is, to require them to come to Court and testify on your behalf. You certainly do not have to do that as no defendant, of course, is required to prove his

innocence. Do you understand by pleading guilty, you are giving up that right?

DEFENDANT:        Yes, Your Honor.

THE COURT: That means, Mr. Cline, as far as guilt or innocence is concerned, there will never be a trial, never be a jury, never be any witnesses; is that your understanding?

DEFENDANT:        Yes, Your Honor.

THE COURT: Based on all of the facts and circumstances, then do you believe it is in your best interest to enter this plea?

DEFENDANT:        Yes, Your Honor.

THE COURT: This has been negotiated at least to this point by Ms. Myers through prior discussions with the State. If you were not entering these pleas, then of course, we would have had a trial on Monday and she certainly would have been here ready to go; do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT: I have placed you under oath, should you answer untruthfully any of the questions that I have asked or will ask, you could be charged with the crime of perjury or aggravated perjury; do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT: It is very important, Mr. Cline, because I will point blank ask you in just a moment, if you committed these two crimes. If you tell me that you did, I will find you guilty without any other evidence, do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT:        As you stand there, you have an absolute right to remain silent and no one can force you to plead guilty, no one can force you to answer my questions or say anything that would be incriminating, do you understand that?

DEFENDANT:        Yes, Your Honor.

THE COURT: If we had that trial on Monday, you would have that same right to remain silent. If you did, in fact, remain silent, your silence could not be used against you. You would also have a right to testify at that trial if you wanted to. Ms. Myers would have advised you what she thought you should do, but you're the person on trial; therefore, you make that decision. Do you understand those rights?

DEFENDANT:        Yes, Your Honor.

THE COURT: Do you understand by pleading guilty, you are giving up the right to remain silent?

DEFENDANT:        Yes, Your Honor.

THE COURT:    Do you likewise understand that you are giving up that right to testify?

DEFENDANT:        Yes, Your Honor.

THE COURT: As far as guilty -- needless to say, these are very, very serious felony convictions. If you are convicted of anything in the future, these convictions as well as all convictions will be used to greatly increase punishment, do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: As far as guilt or innocence is concerned, that will be final today. You are giving up all rights to appeal to any higher Court. If you had had a jury trial and a jury found you guilty and then were sentenced you would have a right to appeal what the jury did in finding you guilty as well as what the Court did in sentencing. Today, you are giving up all rights to appeal guilt or innocence, do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: You are not giving up your right to appeal what the Court might do in sentencing, do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Part of the public defender's job is to do that appeal for you, do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Any questions about any of this, Mr. Cline?

DEFENDANT: No, sir.

THE COURT: Do you want me to accept your pleas in this agreement?

DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Cline then, I believe back in March of 2008, did you in fact, intentionally sexually penetrate EC who was more than three years of age and less than thirteen years of age by inserting your penis into her anus?

DEFENDANT: Yes, Your Honor.

THE COURT: Is this the same day or different dates?

GENERAL NASH: Same day.

THE COURT: Same day --

MS. MYERS: Same incident, also, Your Honor.

THE COURT: And at that same date then, Mr. Cline, did you in fact, sexually penetrate EC, who was more than thirteen years of age and less than -- more than three years of age but less than thirteen by inserting your penis into her mouth?

DEFENDANT: Yes, Your Honor.

THE COURT: Find Mr. Cline then, guilty in rape of a child in counts one and two, order a presentence report and remaining counts then are dismissed in settlement.

(Doc. No. 27-2 at 3–15.)

At his subsequent sentencing hearing, Petitioner testified about his military service and commendations and about childhood abuse he had suffered in the care of his mentally ill mother. (Doc. No. 27-3 at 10–12.) He testified that he was participating in sex offender therapy in prison, and working on his education. (*Id.* at 13.) He also testified to the following regarding his motivations for pleading guilty:

> The biggest thing is, you know, I am sorry. I know it doesn't mean much right now. But you know, I pray and ask, you know, forgiveness, and that one day my family, you know, my ex-wife, my two children will be able to forgive me and move on from this. I know I messed up, and I'm paying for it with my life.
>
> . . .
>
> Because I really don't want my family to go through this. They've been through – quite frankly, they've been through hell, excuse me, and I really, I want it done. I want them to be able to move on; I want to move on. And I mean, it's – it's a rough case. My heart breaks for them. You know, I – I hate what I've done. I hate what they've gone through. I just really want – I want to make things better as much as I can. I know I can't fix it, I can't take back anything, but I want to do what I can to help them recover and be able to move on in life.

(*Id.* at 14–15.)

The trial court considered Petitioner's testimony, but found that several statutory aggravating circumstances, including the nature of the crimes and the relationship between Petitioner and his victim, warranted running the two 25-year sentences consecutively to each other but concurrent with his federal sentence. (Doc. No. 27-3 at 26–28.)

### III. ISSUES PRESENTED FOR REVIEW

The amended petition asserts six claims for relief:

1. Petitioner received the ineffective assistance of counsel. (Doc. No. 17 at 8, 19.)

2. Petitioner's guilty plea was not knowing and voluntary. (*Id.* at 10, 20.)

3. The evidence against Petitioner was obtained through illegal search and seizure in violation of the Fourth Amendment. (*Id.* at 11, 21.)

4. Petitioner's prosecution in both state and federal court violated the Double Jeopardy Clause of the Constitution. (*Id.* at 13, 22.)

5. Petitioner's indictment was defective. (*Id.* at 23.)

6. Petitioner's sentences are excessive in violation of the Eighth Amend prohibition on cruel and unusual punishments. (*Id.* at 25.)

## IV.     STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" on the outcome of the case. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing

*Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" *Young v. Hofbauer*, 52 Fed. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and

(e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must

have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause

include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## V.     ANALYSIS AND DISCUSSION

### A.   EXHAUSTED CLAIMS

CLAIM 1 — Ineffective Assistance

Petitioner alleges that his counsel was ineffective for several reasons: failing to investigate problems with the state's case including double jeopardy, chain-of-custody problems, and illegal search and seizure; failing to adequately investigate and present mitigating evidence from his background and childhood; failing to object to the misapplication of state law regarding aggravating factors; failing to cross-examine the victim's mother; and failing to maintain sufficient

communication with Petitioner about case strategy. (Doc. No. 17 at 19.) Petitioner asserts that he exhausted this claim in post-conviction proceedings. (*Id.* at 8–9.) He exhausted a broad ineffective-assistance claim on post-conviction, in which he argued that counsel performed deficiently with regard to "suppression issues," failure to share and discuss evidence with him, general failure to "argue, submit documents, investigate or communicate," failure to challenge the propriety of his prosecution in Tennessee court and the proof that the victim was adversely affected by the crimes, failure to investigate and present mitigation evidence, failure to file "motions, such as Double Jeopardy," abandoning "motions and trial strategy," and generally "ignor[ing] Mr. Cline's defense."[3] (Doc. No. 27-14 at 11–14, 18.) In its review of the claim, the Tennessee Court of Criminal Appeals summarized testimony from the post-conviction hearing:

> Because Petitioner was incarcerated in a federal facility in Petersburg, Virginia, he testified via electronic deposition. He could recall meeting with trial counsel only two times over four to five months but conceded that they might have met a "couple" times more. Further, he claimed that he did not meet with anyone else from trial counsel's law office. Petitioner remembered the trial court telling him about his rights and how he would be waiving those rights by pleading guilty. He recounted that when the trial court asked if he knowingly and voluntarily pled

---

[3] Petitioner's ineffective-assistance claim in state court was broad, rambling, and imprecise, as it is in this case. Respondent attempts to parse the current claim into eight sub-claims identified on several pages scattered throughout his Answer (Doc. No. 28 at 4–5, 12–16) and asserts that several of them are procedurally defaulted. This good idea falls short, however, as Respondent's approach is difficult to follow and appears objectively incomplete and inaccurate. For example, Respondent completely ignores Petitioner's claim that counsel failed to investigate double jeopardy issues, which appears in both his state court appellate brief and his current claim. (Doc. No. 27-14 at 14; Doc. No. 17 at 19.) Because it is more straightforward to turn directly to the merits of Petitioner's claim than to conduct a painstaking comparison of his state court brief and his current claim to determine whether it is exhausted, the Court treats this claim as exhausted as a whole regardless of its alleged partial default. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (proceeding directly to merits analysis because "the question of procedural default presents a complicated question . . . and is unnecessary to our disposition of the case"); *Forensic v. Birkett*, 451 F. Supp. 2d 874, 887 (E.D. Mich. 2006) (performing de novo review of unexhausted habeas claim because "it is easier to address the merits of Petitioner's claim than to perform a procedural default analysis").

guilty, he responded, "I understand and I do."

Petitioner maintained that he had never seen the video and that "there was really no reference to [the video] as well." But, Petitioner admitted that he was aware of the existence of a video and that trial counsel discussed the existence of the video with him. Petitioner claimed that trial counsel did not properly investigate whether the video was obtained improperly and subject to suppression. Petitioner asserted that he would not have pleaded guilty if he had seen the video and other documents that were allegedly kept from him. One of those documents was the report of the Department of Children's Services ("DCS"), which Petitioner had "heard" contained no admission by the victim that she was the child in the video. Petitioner maintained that if he had been provided all of the information, he would have gone to trial because he "got basically, what [he] would have gotten had [he] gone to trial, which is a life sentence."

With regard to his representation by trial counsel Petitioner went on to say:

> I don't really see how she really represented me. She didn't question the witnesses on the stand during sentencing; didn't provide, really any support other than sitting there . . . [n]o mitigating factors were presented; I wasn't given information as far as what evidence was supposed to be used or planned to be used. She wouldn't answer correspondence.

Petitioner admitted that trial counsel objected to some testimony during the sentencing hearing and the testimony was excluded. He further admitted that trial counsel put on mitigation evidence regarding his childhood, his mother's mental health issues, and Petitioner's history as a victim during his childhood. Despite the introduction of this evidence, Petitioner indicated that he wanted to talk about his experiences in the military dealing with post-traumatic stress disorder, anxiety, and depression. Petitioner claimed that he was aware that the trial court could run his sentence consecutively to his federal sentence but that he was not aware that the trial court could run his state sentences consecutively to one another. He says that he understood the total sentence on both counts to be "25-years period[.]"

Trial counsel testified at the post-conviction hearing that she had been a licensed attorney since 2005 and that she had handled two to three child sex cases a month at the public defender's office. Trial counsel said that she met with petitioner "at least six times" via video monitor and that it was her practice to meet with clients in person on serious cases like this one. According to trial counsel, during her meetings with Petitioner, she discussed the contents of the child forensic report and the DCS records. Further, she said that those documents were provided to Petitioner as a part of his discovery package. Trial counsel indicated that she viewed the video and discussed its contents with Petitioner. Trial counsel conducted research and determined that the video was seized legally.

Trial counsel testified that she recognized that Petitioner was serving a federal sentence and investigated whether there was a bar to prosecution by the State. Trial counsel conducted multiple plea negotiations with the State which culminated in the State agreeing to the plea ultimately entered by Petitioner. She stated that

Petitioner pled guilty to production of the video in federal court, and the contents of the video revealed that the person doing the filming was also the person engaging in the criminal act. Trial counsel went on to say that the victim was identifiable from the contents of the video. Trial counsel said that she discussed the case with Petitioner and told him that it was likely that he would be convicted on all of his charges if the case went to trial. She further explained that the maximum sentence for a conviction on all counts could be over 100 years. In trial counsel's opinion, the best shot at getting concurrent sentencing was to do an open plea. Trial counsel recounted that Petitioner told her that "he wanted to take a guilty plea, because he didn't want to put the child through anymore and his wife— ex-wife through anymore[.]"

(Doc. No. 27-16 at 3–4.)

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To establish prejudice in the context of a guilty plea, a petitioner who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Supreme Court has further explained the *Strickland* prejudice requirement as follows:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed above, however, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, or that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is

a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

The Tennessee Court of Criminal Appeals accurately identified and explained the *Strickland* standard for federal ineffective-assistance claims, and its application in the guilty plea context under *Hill v. Lockhart*. (Doc. No. 27-16 at 5–6.) It then went on to reject Petitioner's claim on the merits of both *Strickland* prongs:

> In this case, trial counsel met with Petitioner multiple times. During those meetings, trial counsel and Petitioner discussed the DCS report, the contents of the video, implications of going to trial, and Petitioner's sentencing exposure. Trial counsel negotiated a plea agreement with the State and provided advice to Petitioner on whether to take the deal. Petitioner took the deal because "he didn't want to put the child through anymore and his wife—ex-wife through anymore[.]" At the sentencing hearing, trial counsel objected to inadmissible testimony, conducted a direct examination of Petitioner, entered letters on behalf of Petitioner into evidence, and argued on Petitioner's behalf. Trial counsel's actions met an objective standard of reasonableness. Trial counsel was not deficient.

> Moreover, Petitioner has failed to show that he was prejudiced by trial counsel's actions. Petitioner admitted to raping the victim, and at the sentencing hearing, he stated that he was pleading guilty to relieve the burden on his family. Now, in hindsight, Petitioner claims that he would have not have pled guilty. None of the deficiencies in representation alleged by Petitioner create a reasonable probability that he would not have pled guilty.

(Doc. No. 27-16 at 6.)

Petitioner has not established that this disposition of his claim was objectively unreasonable. The state courts obviously credited counsel's testimony that she had conducted the appropriate research and found there was no basis to suppress the videotape or to bar the state prosecution, and "federal habeas courts do not have license, under § 2254(d), to redetermine witness credibility, whose demeanor is observed exclusively by the state court." *Givens v. Yukins*, 238 F.3d 420 (6th Cir. 2000) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The record

is crystal clear that Petitioner pleaded guilty because (in apparently a more altruistic frame of mind) he did not want to subject his victim and her mother to a trial, the outcome of which his attorney correctly advised him was almost certain to be a conviction in light of the videotape he had already admitted to making. He hoped for concurrent sentences and believed pleading guilty gave him the best chance of that outcome. The state court reasonably determined that there was not a substantial likelihood that Petitioner would have elected to go to trial in those circumstances if his counsel had approached the case any differently.

With respect to the portion of Petitioner's claim about ineffective assistance at sentencing, a 25-year sentence was mandatory for each count of child rape, and the only issue to be determined at the sentencing hearing was whether those sentences would run consecutively or concurrently with each other and/or the previously-imposed federal sentence. As discussed further in Section V.B.5 below, the Tennessee Court of Criminal Appeals determined on direct appeal that the imposition of consecutive state sentences was appropriate in this case under state law. There is no reasonable probability that a more aggressive cross-examination of the victim's mother, who was the only witness at the sentencing hearing other than Petitioner, would likely have led to concurrent sentences. Moreover, that approach would have been contrary to Petitioner's express desire to prevent his ex-wife from having to "go through this" and his strategy of throwing himself on the court's "grace and mercy." (*See* Doc. No. 27-3 at 15.) Petitioner suggests that counsel should have researched and presented more mitigating evidence about his life, but the state court on post-conviction appeal correctly observed that, when counsel asked him at his sentencing hearing whether there was anything else he wanted to say, Petitioner responded "Nothing coming to mind." (Doc. No. 27-16 at 2; Doc. No. 27-3 at 15.) Accordingly, Petitioner has not demonstrated that counsel's performance at sentencing was objectively unreasonable or that there is any

substantial likelihood that he would have received a lighter sentence if counsel had performed differently.

Claim 1 thus fails on its merits.

## B. DEFAULTED CLAIMS

1. CLAIM 2 — Guilty Plea Not Knowing and Voluntary

Petitioner asserts that his plea was not knowing and voluntary because he pleaded guilty believing that the only issue to be determined at sentencing was whether his state sentences would be concurrent or consecutive to his previously imposed federal sentence. (Doc. No. 17 at 20.) The fact that the trial court ordered his state sentences to run consecutive to each other, Petitioner says, rendered his plea unknowing and involuntary. (*Id.*) He asserts that he raised this claim in state court post-conviction proceedings and exhausted it in post-conviction appeal. (*Id.* at 10–11.) Respondent asserts that this claim is nevertheless procedurally defaulted because the Tennessee Court of Criminal Appeals found that it was waived. (Doc. No. 28 at 8.)

Petitioner raised this claim in his Amended Petition for Post Conviction Relief. (Doc. No. 27-11 at 90.) The post-conviction court denied relief on the merits of the claim. (Doc. No. 27-11 at 98–99) (concluding that "the contention that convictions were based on an unlawfully induced guilty plea, or guilty plea involuntarily entered without understanding of the nature and consequences of the plea, is found to be without merit"). On appeal from the denial of post-conviction relief, the Tennessee Court of Criminal appeals acknowledged that the issue statement in Petitioner's appellate brief included an assertion that his plea was not knowing and voluntary, but then explained:

> Yet, the issue statement is the only time that the phrase "knowing and voluntary" appears in Petitioner's brief. No argument is made regarding the voluntariness of Petitioner's plea nor is any case law cited on that issue. Thus, any claim that

> Petitioner's guilty pleas were not knowing and voluntary that exists independently of his ineffective assistance of counsel claim is waived. *See* Tenn. Ct. Crim. App. R. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

(Doc. No. 27-16 at 7.)  As explained above, if this ruling constitutes an adequate and independent state ground for rejection of Petitioner's claim, the claim is procedurally defaulted and not subject to federal habeas review. *Walker v. Martin*, 562 U.S. 307, 315 (2011).

The United States Court of Appeals for the Sixth Circuit has repeatedly held that Tennessee's Rule 10 waiver rule is a "'firmly established and regularly followed' rule" that is "independent of the federal question and adequate to support the judgment." *Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013) (quoting *Beard v. Kindler*, 558 U.S. 53, 53 (2009) and *Middlebrooks v. Bell*, 619 F.3d 526, 535–36 (6th Cir. 2010)).  Accordingly, the state court's rejection of Petitioner's claim on that basis renders his claim procedurally defaulted. *Id.*

Petitioner does not argue that he has any cause or prejudice to excuse the default of this claim. (Doc. No. 17 at 10–11, 20.)  Nor has Petitioner established that the rejection of this claim constitutes any miscarriage of justice.  His understanding of his possible sentence structure at the time of his plea has no bearing on his guilt or innocence of the crimes to which he confessed. Moreover, the Court notes that Petitioner acknowledges that he understood the trial court could order concurrent 25-year state sentences to run consecutive to his 27+-year federal sentence.  He was apparently prepared, therefore, for the possibility that his total effective sentence might exceed 52 years.  The trial court's imposition of consecutive 25-year sentences to run concurrent with Petitioner's 27-year federal sentence resulted in a total effective sentence of 50 years—more than two years shorter than a potential sentence Petitioner admittedly knew he risked when he pleaded guilty.  Accordingly, even if he were confused about all the different permutations his sentence could take, he was not actually prejudiced by an outcome that was more beneficial than one he

willingly risked.

This claim is procedurally defaulted without cause or prejudice and is not subject to habeas review.

2.      CLAIM 3 — Illegal Search and Seizure

Petitioner asserts that U.S. Army C.I.D. personnel conducted an illegal search and seizure of his property in his shared living quarters in Iraq. (Doc. No. 17 at 11–12, 21.)  He says that he raised this claim in post-conviction proceedings and exhausted it on post-conviction appeal. (*Id.* at 12.)  The post-conviction court found the claim to be without merit, finding that "[t]here is nothing in the record of this case to support the contention there was use of evidence gained pursuant to an unconstitutional search and seizure." (Doc. No. 27-11 at 99.)  On post-conviction appeal, this claim was relegated to once sentence of the summary of Petitioner's post-conviction hearing testimony in the context of an ineffective-assistance claim (Doc. No. 27-14 at 6, 11), and the Tennessee Court of Appeals appears only to have ruled on the merits of the ineffective-assistance claim. (Doc. No. 27-16 at 4–6) (observing that "[t]rial counsel conducted research and determined that the video was seized legally").  The Court finds this independent challenge to the legality of the search and seizure to be procedurally defaulted.

Moreover, Petitioner's guilty plea itself waived any Fourth Amendment challenge to the collection of evidence against him.  The Supreme Court has ruled that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [applicable to ineffective-assistance claims].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Another district court in this circuit more recently

explained the applicable law when it rejected the Fourth Amendment of a habeas petitioner who had pleaded guilty:

> Moreover . . . Petitioner has waived the issue by pleading guilty. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.
>
> Petitioner does not challenge either the validity of the plea or the jurisdiction of the trial court. Instead, Petitioner's claim that the search warrant violated the Fourth Amendment is an antecedent constitutional violation that is not cognizable on habeas review. *Tollett*, 411 U.S. at 266; *see also United States v. Anderson*, 293 Fed. Appx. 960 (3d Cir. 2008) (applying *Tollett* and holding that entry of a guilty plea forecloses subsequent attack on adequacy of arrest warrant); *United States v. Rivera-Juarez*, No. 93-4288, 1994 WL 657087, at *1 (6th Cir. Nov. 21, 1994) (holding that a guilty plea waives a petitioner's claims of illegal arrest and searches). As a result, by entering his guilty plea, Petitioner waived his claim based on the search warrant.

*Clausell v. Olson*, No. 2:16-CV-250, 2016 WL 7155383, at *5 (W.D. Mich. Dec. 8, 2016).

In this case Petitioner has not challenged the jurisdiction of the state court to try him on the state charges, and the Court has already separately addressed his claims that his plea was not knowing and voluntary and that ineffective assistance of trial counsel invalidated his plea. Petitioner's conviction was ultimately based not on the evidence gathered in Iraq but on his admission in open court during his plea that he had intentionally sexually penetrated the victim twice on the date in question. That "break in the chain of events" waived any constitutional challenge to the collection of evidence he might otherwise have asserted, including this claim.

3.      CLAIM 4 — Double Jeopardy

Petitioner alleges that his state prosecution for the same sex crimes portrayed in the child pornography for which he was convicted in federal court amounted to his being punished twice for the same acts in violation of the constitutional prohibition against double jeopardy. (Doc. No.

17 at 22.) He asserts that he exhausted this claim in post-conviction proceedings (*id.* at 13–14), but both his post-conviction appellate brief and the Tennessee Court of Criminal Appeals' opinion are limited to his ineffective-assistance claim.[4] (Doc. No. 27-14 at 6; Doc. No. 27-16 at 4.) Accordingly, this independent claim is defaulted.

Again, moreover, this claim is waived as a matter of federal law for the same reason his Fourth Amendment claim is waived: he waived it by pleading guilty to the allegedly unconstitutional charge. *United States v. Broce*, 488 U.S. 563, 565 (1989) ("We hold that the double jeopardy challenge is foreclosed by the guilty pleas and the judgments of conviction.").

And finally, this claim clearly lacks merit as a matter of law. The Supreme Court has explained that, in order to determine whether the double jeopardy prohibition has been violated, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The production of child pornography under 18 U.S.C. § 2251(a) and rape of a child under Tenn. Code Ann. § 39-13-522 each require elements not required by the other.[5] And even if that were not the case, separate prosecutions by "separate sovereigns," such as a state

---

[4] The only reference to Double Jeopardy in Petitioner's state court brief is this single sentence in the summary of trial counsel's testimony: "No motions, such as Double Jeopardy, were filed by Ms. Myers in Mr. Cline's case." (Doc. No. 27-14 at 14.)

[5] Rape of a child in Tennessee law is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim" if the victim is between the ages of three and thirteen. Tenn. Code Ann. § 39-13-522(a). 18 U.S.C. § 2251(a) covers, inter alia, the use of "any minor" in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" if the defendant knows or has reason to know the depiction will be transported or transmitting in interstate or foreign commerce or was produced or transmitted using materials that were transported in interstate or foreign commerce, including by computer. Each offense thus requires multiple elements not required by the other, including sexual penetration and a specific age range on the state offense, and intent to produce a visual depiction and touching interstate or foreign commerce on the federal offense.

and the federal government, typically do not constitute a double jeopardy violation. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985) ("[W]hen the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.") (Internal punctuation and citation omitted).

This claim is defaulted and would fail on its merits even if the Court considered it.

4.      CLAIM 5 — Defective Indictment

Petitioner claims that his state indictment was defective in several non-jurisdictional respects and says that he exhausted the claim in post-conviction proceedings. (Doc. No. 17 at 23–24.)  However, there is no mention of any defect in his state court indictment in Petitioner's post-conviction appellate brief. (Doc. No. 27-14.)  This claim is clearly defaulted.

Moreover, this claim, too, was waived by Petitioner's guilty plea: "A valid guilty plea waives all non-jurisdictional defects in the defendant's indictment." *United States v. Ball*, No. 93-3743, 12 F.3d 214 (Table), 1993 WL 524240, at *1 (6th Cir. Dec. 15, 1993) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

5.      CLAIM 6 — Excessive Sentence

Finally, Petitioner claims that his effective fifty-year sentence constitutes cruel and unusual punishment for offenses that were "not threatening nor aggressive" because the six-year-old rape victim "compl[ied] with the suggestions in the footage and did not appear under duress in any way." (Doc. No. 17 at 25.)  He asserts that he exhausted this claim in post-conviction proceedings. (*Id.* at 26.)

Petitioner did assert this claim in his pro se post-conviction petition (Doc. No. 27-11 at 33), but he did not raise it on appeal from the denial of post-conviction relief. (Doc. No. 27-14.)  And

his claim on direct appeal that the trial court had abused its discretion by ordering his state sentences to run consecutively relied exclusively on state law concerning the proper application of Tennessee's statutory sentencing factors. (*See* Doc. No. 27-5.) Accordingly, the Court agrees with Respondent (*see* Doc. No. 28 at 6) that Petitioner's federal constitutional challenge to his sentence is procedurally defaulted.

Alternatively, even if the Court construed Petitioner's direct state appeal to exhaust a federal claim, Petitioner fails to establish that the state court's ruling was unreasonable. The Tennessee Court of Criminal Appeals found that Petitioner's role as the victim's step-father, the victim's age of six years, and the emotional damage evidenced by her counseling and difficulty with relationships in the years after the rape were appropriately weighed as aggravating factors in Petitioner's sentencing and "carried sufficient weight for the imposition of consecutive sentences." (Doc. No. 27-7 at 5–6.) Petitioner's argument that his sentence is more severe than those of other defendants convicted of similar or worse crimes (Doc. No. 17 at 25) does not establish that his sentence is unconstitutional, and he does not cite any Supreme Court authority that supports his position.

Indeed, there is no such authority that would make the state court's ruling objectively unreasonable. Little more than ten years ago, the Supreme Court held that the death penalty is an unconstitutionally excessive sentence for child rape, but even then it acknowledged that rape "is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim," *Kennedy v. Louisiana*, 554 U.S. 407, 437, as modified (Oct. 1, 2008), *opinion modified on denial of reh'g*, 554 U.S. 945 (2008) (quoting *Coker v. Georgia*, 433 U.S. 584, 597–98 (1977)), and that it "has a permanent psychological, emotional, and sometimes physical impact on the child" leading to "long years of anguish" that should not be

dismissed. *Id.* at 435.

In rejecting an Eighth Amendment habeas claim by a petitioner sentenced to consecutive sentences totaling fifty years to life for kidnapping to commit rape, forcible oral copulation, and forcible rape, the United States District Court for the Central District of California explained:

> Although the Supreme Court has ruled that a sentence of death is grossly disproportionate to the crime of rape (see id.), it has never suggested that a sentence of years, even one involving the possibility of life imprison, is equally grossly disproportionate. And, considering that the Supreme Court has condoned a life sentence for the relatively minor crime of drug possession, there is no reason to believe that the Supreme Court would ever hold that a life sentence is grossly disproportionate to the crime of rape – let alone a fifty-year sentence for rape and forcible oral copulation where the defendant kidnapped the victim in order to accomplish his crimes.

> Moreover, courts addressing the issue have routinely held that comparable sentences for rape do not violate the Eighth Amendment's ban on cruel and unusual punishment. *See, e.g., Cervantes v. Small*, 2009 WL 6639280, *40–41 (C.D. Cal. Nov. 19, 2009) (holding that Eighth Amendment not violated by twenty-five year-to-life sentence for forcible rape, rape by the use of an intoxicant, rape of an unconscious person, rape in concert, kidnapping, and special allegation that the victim was kidnapped for purposes of rape); *Singh v. Martel*, 2011 WL 1740588, *25–26 (E.D. Cal. May 4, 2011) (holding that thirty-nine year-to-life sentence for five forcible sex offenses in concert, and aggravated kidnapping circumstance, was not grossly disproportionate to seriousness of crimes); *Pierre v. Radar*, 2012 WL 3027934, *1 (E.D. La. July 24, 2012) (adopting recommendation rejecting Eighth Amendment challenge to thirty-five-year sentence for attempted forcible rape and second degree kidnaping); *Ross v. Addison*, 2012 WL 1080840, *8 (N.D. Okla. March 30, 2012) (sentence of life without parole for three first degree rape convictions did not constitute cruel and unusual punishment; *Hyatt v. Weber*, 468 F.Supp.2d 1104, 1126–27 (D. S.D. 2006) (consecutive sentences of fifty-five years for first degree rape and fifteen years for sexual contact with child under age of sixteen were not grossly disproportionate to gravity of crimes); *see also Bunch v. Smith*, 685 F.3d 546, 547–50 (6th Cir. 2012) (state court reasonably determined that 16–year–old offender's cumulative 89–year sentence for robbery, kidnapping, and rape did not violate Eighth Amendment).

*Andrade v. McDowell*, No. CV 14-8780 MWF (FFM), 2015 WL 7444265, at *9 (C.D. Cal. Aug. 3, 2015), *report and recommendation adopted*, No. CV 14-8780 MWF (FFM), 2015 WL 7454506 (C.D. Cal. Nov. 23, 2015). Petitioner's 50-year sentence for two counts of rape of a child, therefore, does not appear to be proscribed by Supreme Court precedent. More importantly for

the purpose of this review, it is certainly not so clearly proscribed that the state court's contrary ruling was unreasonable beyond any fair-minded debate.

This claim is both procedurally defaulted and without merit.

## VI.    CONCLUSION

Petitioner's claims are all either defaulted or fail on their merits for the reasons set forth above.  Accordingly, the Court will deny the requested relief and dismiss the petition.

An appropriate Order will enter.


_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE